**Edna JOHNSON, et al.,**
**Plaintiffs-Appellees,**

**v.**

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellant.**

**Nos. 85–1254, 85–1490.**

United States Court of Appeals, Seventh Circuit.

Argued June 14, 1985.

Decided July 30, 1985.

---

Joseph A. Antolin, John Bouman, Steven Coursey, Shelley Davis, Robert E. Lehrer, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs-appellees.

Mark B. Stern, Dept. of Justice, Civil Div., Appellate Section, Washington, D.C., for defendant-appellant.

Before BAUER and WOOD, Circuit Judges, and GRANT, Senior District Judge.*

BAUER, Circuit Judge.

In this class action, applicants for and recipients of Social Security Disability Insurance Benefits challenge regulations promulgated by the Secretary of Health and Human Services. Plaintiff-applicants allege that the Secretary's regulations governing the sequential evaluation for determining disability claims violate the Social Security Act and the Constitution by denying benefits at a threshold step even to those claimants who meet their prima facie burden under the Act, and by declining to consider the combined impact of nonsevere impairments in determining whether the threshold step is met. On September 19, 1984, 593 F.Supp. 375, after cross motions for summary judgment, the district court enjoined the Secretary from applying the challenged regulations and ordered her to redetermine class members' eligibility for benefits. On December 17, 1984, 607 F.Supp. 875, the district court denied the Secretary's motion for reconsideration based on the passage of the Social Security Disability Benefits Reform Act of 1984 (1984 Amendment), which was signed into law on October 9, 1984. We granted the Secretary's motion for a stay pending appeal and now affirm the district court.

I.

In this case plaintiffs essentially challenge a threshold step, known as "step two," in the Secretary's social security disability evaluation process. Effective February 1979 the Secretary amended the regulations promulgated by her under the Social Security Act to establish a five-step sequential evaluation process for determin-

---

* The Honorable Robert A. Grant, Senior Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

ing eligibility for disability benefits. 43 Fed.Reg. 55349 (1978) (codified at 20 C.F.R. §§ 414.1520 & 416.920). The regulations provide:

(b) *If you are working.* If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.

(c) *You must have a severe impairment.* If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience....

(d) *When your impairment meets or equals a listed impairment in Appendix 1.* If you have an impairment which meets the duration requirement and is listed in Appendix 1, or we determine that the impairment is equal to one of the listed impairments, we will find you disabled without considering your age, education, and work experience.

(e) *Your impairment must prevent you from doing past relevant work.* If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment, we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

(f) *Your impairment must prevent you from doing any other work.* (1) If you cannot do any work you have done in the past because you have a severe impairment, we will consider your residual functional capacity and your age, edu-

cation, and past work experience to see if you can do other work. If you cannot, we will find you disabled.

20 C.F.R. 404.1520(b)–(f)(1).

The Secretary explained that the denials of claims under the step two severity regulation, 20 C.F.R. § 414.1520(c), were

justified on the basis of medical considerations alone when the degree of a medically determinable impairment is found to be not severe. A non-severe impairment may consist of one or more separate conditions that do not significantly limit the individual's physical or mental capacity to perform basic work related functions.... When there is no significant limitation on the ability to perform these types of basic work related functions, an impairment will not be considered to be severe even though it may prevent the individual from doing work the individual has done in the past.

SSR 82–56. Social Security Rulings (SSR) are binding on all Social Security Administration (SSA) personnel, including state agency adjudicators, Administrative Law Judges (ALJs), and the Appeals Council. 20 C.F.R. § 422.408. On August 20, 1980, the Secretary promulgated a list setting forth examples of impairments that were automatically to be held non-severe regardless of whether they prevented the claimant's performance of his "past work." *See* SSR 82–55.[1]

The plaintiffs also challenge the Secretary's regulations concerning the combination of non-severe impairments in the determination of disability. On August 20, 1980, the Secretary further amended the disability regulations to provide that at step two of the process, § 414.1520(c), she would "consider the combined effects of unrelated impairments [in determining dis-

---

**1.** The examples given in SSR 82–55 of *per se* non-severe impairments include, *inter alia,* osteoarthritis corroborated by x-ray findings with the symptoms of pain and stiffness, hypertension, history of chest pain, colostomy, peptic ulcer, chronic liver disease, chronic renal disease, diabetes mellitus, epilepsy, and IQ of 80 or greater. The ruling emphasizes a national, ge-

neric concept of the level of health required for most jobs; "to be found disabled, an individual must have a severe medically determinable impairment. That standard cannot be satisfied by any impairment(s) that is compatible with the ability to perform basic work-related functions as required in most of the numerous jobs in the national economy." SSR 82–55.

ability] only if all were severe." 45 Fed. Reg. 55574 (1980) (codified at 20 C.F.R. § 404.1522).

The named plaintiffs in this case demonstrate the effect of the Secretary's 1979 and 1980 amendments to her regulations and rulings. Named plaintiff Edna Johnson applied for Supplemental Security Income benefits on March 24, 1982. At that time Johnson suffered from diabetes, mellitus, lumbago, a duodenal ulcer, Echazski's ring of the esophagus, and anxiety neurosis. Johnson was a nurse's aide who had completed two years of high school. The job of nurse's aide requires "medium" exertional capacities. U.S. Dept. of Labor, Dictionary of Occupational Titles & Selected Characteristics (1981) (DOT). Johnson presented unrebutted evidence that due to her impairments, for which she had been hospitalized five times since 1970, she retained a residual functional capacity to perform only sedentary work and thus did not retain the capacity to perform her past work. After a hearing, an ALJ considered each of her impairments in turn and held that each one, taken separately, was "not severe," pursuant to step two of the regulation. The ALJ did not consider Johnson's inability to perform her past work as sufficient to satisfy the step two threshold test. Consequently, the ALJ denied benefits and the Appeals Council affirmed.

James Montgomery, the second named plaintiff, was afforded disability benefits by the Secretary in November 15, 1976, due to diabetes and heart disease. On January 8, 1982, the Secretary informed Montgomery that he was no longer considered disabled and that his benefits ceased in October, 1981. At the hearing, held after Montgomery appealed the termination of his benefits, Montgomery presented unrebutted evidence that he suffered from hypertension, ischemic heart disease with angina pectoris, diabetes, mild obesity, degenerative osteoarthritis of the spine, and the effects of fractures of the hip, leg, and foot. Prior to the onslaught of his illnesses, Montgomery had worked for 28 years as a butcher, cutter, and boner in a meat packing plant. He has a sixth grade edu-

cation. Montgomery presented uncontroverted evidence that he retained the residual functional capacity to perform no more than sedentary work due to his combined impairments. Montgomery's past job required "heavy" exertional capacity, although a butcher's job could also be classified as "medium." Therefore, Montgomery did not retain the residual functional capacity to perform his past work.

The ALJ reversed the reconsideration decision to terminate benefits, finding Montgomery still disabled. On its own motion, the Appeals Council reversed the ALJ's decision and reinstated the previous termination. The Council held that each of Montgomery's impairments considered singly were non-severe and did not consider the combined effects of the impairments or Montgomery's inability to perform his past work.

On August 11, 1983, Johnson and Montgomery filed an amended class complaint challenging the step two regulation on statutory and constitutional grounds and seeking a redetermination of the denial of benefits. The class was certified on December 7, 1983, and defined as:

> [a]ll persons in Illinois who are filing or have filed applications for disability benefits under Title II and/or Title XVI of the Social Security Act, and whose benefits are being or have been denied pursuant to the policies set forth in 20 C.F.R. §§ 404.1520(c), 404.1522, 416.920(c) and 416.922 (1982), and Social Security Rulings cum. ed. 82–55 (1982); and all recipients of such benefits who are making or have made claims for continued benefits ... and whose benefits are being or have been terminated pursuant to the same policies.

*Johnson v. Heckler,* 100 F.R.D. 70, 72 (N.D.Ill.1983).

On September 19, 1984, the district court held that the step two regulation and rulings violated the Act and required the Secretary to consider the "combined effect" of non-severe impairments. On December 17, 1984, the district court denied the Secre-

tary's motion to alter or amend its earlier order based on the passage of the Social Security Disability Benefits Reform Act of 1984. Pub.L. 98–460.

On March 5, 1985, pursuant to the 1984 Act, the Secretary amended 20 C.F.R. § 404.1520(c) & 416.920(a) to direct her adjudicators to consider the combined effect of all of an individual's impairments in determining the existence of a severe impairment at step two. 50 Fed.Reg. 8726, 8727 (March 5, 1985). The amended regulations applied to "all Title II and Title XVI disability determinations [made] ... on or after December 1, 1984." *Id.* at 8727. On April 17, 1985, this court stayed "the effect of" the September 19, 1984, order pending this appeal, 604 F.Supp. 1070.

## II. JURISDICTIONAL ISSUES

The Secretary first argues that the district court lacked jurisdiction because the plaintiff class has failed to exhaust its administrative remedies. Some of the plaintiff class members have not yet had a final administrative hearing. The district court waived the exhaustion requirement because it held that the plaintiff class had met both the futility and collateral claim tests for waiver. We think the district court was correct.

 Congress has required that a Social Security claimant exhaust his administrative remedies before seeking judicial review. *See* 42 U.S.C. § 405(g). *See also Heckler v. Day,* —— U.S. ——, 104 S.Ct. 2249, 2251, 81 L.Ed.2d 88 (1984). Section 405(g) has been interpreted by the Supreme Court to contain two parts: first, a claim for benefits must have been filed; second, the Secretary must have made a final decision on that claim. *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976). The first requirement is not waivable. The second requirement of a final decision, however, may be waived either by the Secretary or by the courts. *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 2023, 80 L.Ed.2d 622 (1984); *Mathews v. Eldridge,* 424 U.S. at 328, 96 S.Ct. at 899; *Giacone v. Schweiker,* 656 F.2d 1238,

1241–43 (7th Cir.1981). A court may waive the exhaustion requirement when the plaintiff's claims are entirely collateral to his claim of entitlement and when the plaintiff's interest in having the issue resolved promptly is sufficiently great so as to render deference to the agency's judgment inappropriate. *Giacone,* 656 F.2d at 1243. Waiver also is appropriate where the pursuit of administrative remedies would be futile because the Secretary's position on the statutory issues is "final." *Kuehner v. Schweiker,* 717 F.2d 813, 817 (3d Cir.1983), *remanded on other grounds,* —— U.S. ——, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984); *Wright v. Califano,* 587 F.2d 345, 349 (7th Cir.1978).

The Supreme Court's most recent ruling concerning the exhaustion requirements of collateralness and futility is *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). The claim in *Ringer* arose from a January 1979 administrative instruction issued by the Secretary to all fiscal intermediaries in the Medicare system announcing that no payment was to be made for Medicare claims for bilateral carotid body resections (BCBRs) on the ground that such services were not "reasonable and necessary for the treatment of illness." Until October 1980, ALJs were not bound by the instruction and consistently ruled in favor of BCBR claims. On October 28, 1980, however, the Secretary issued a formal ruling prohibiting ALJs and the Appeals Council from ordering Medicare payments for BCBRs. Four Medicare claimants for whom BCBRs had been prescribed to relieve pulmonary problems brought suit. Three plaintiffs had had a BCBR before October 28, 1980, and filed claims for reimbursement with a fiscal intermediary of the Medicare program, while the fourth plaintiff never had the surgery, claiming he could not afford it. The plaintiffs sought a declaratory judgment that the Secretary's refusal to fund BCBRs was unlawful and an injunction compelling her to provide payment for the BCBRs.

The district court dismissed the complaint for lack of jurisdiction holding that plaintiffs' failure to exhaust administrative remedies could not be waived because the plaintiffs' claim was essentially one for benefits and thus could not be collateral. The Ninth Circuit reversed, holding, *inter alia*, that the claims were collateral and that exhaustion would be futile.

The Supreme Court reversed. The Court separated the plaintiffs into two groups. The Court held that Ringer, who had neither had the surgery nor filed a claim, had not satisfied the nonwaivable exhaustion requirement of § 405(g) because he had never given the Secretary an opportunity to rule on a concrete "claim" for reimbursement. *Ringer*, 104 S.Ct. at 2025. As to the other plaintiffs, the Court held that exhaustion of remedies was not futile because, on presenting a claim to the Secretary through the ALJ, the ALJ would not be bound by the October 28, 1980, ruling because the plaintiffs had had their BCBRs before October 28, 1980. 45 Fed.Reg. 71427 (1980).

■ The plaintiffs in this case are differently situated than were the plaintiffs in *Ringer*. First, all plaintiffs in the present class have met the *sine qua non* requirement of having filed a claim, *see Johnson v. Heckler*, 100 F.R.D. at 72–73 & n. 3, so that they, unlike Ringer, have given the Secretary an opportunity to rule on concrete "claims," *Ringer*, 104 S.Ct. at 2025, and thus meet the nonwaivable exhaustion requirement. Second, plaintiffs' claims are demonstrably more collateral and render exhaustion more futile than was the case for the other *Ringer* plaintiffs. The *Ringer* plaintiffs had already had surgery and were "at bottom" simply seeking reimbursement. *Ringer*, 104 S.Ct. at 2021. The plaintiffs in this case, however, do not seek the payment of benefits. Rather, they challenge the constitutional and statutory validity of portions of the Secretary's sequential evaluation process.

The district court's ruling will not guarantee the payment of disability benefits to plaintiffs as the Ninth Circuit ruling would have guaranteed Medicare payments to the *Ringer* plaintiffs. Some but not all the class members in this case will be able to satisfy the step two severity regulations of the sequential evaluation process as the district court ordered it defined. Some may meet that test and yet fail to prove their disability at another level. Some may have their impairments combined and yet be unable to prove disability at another level. Under the district court's rulings, far more than mere "ministerial details," *Ringer*, 104 S.Ct. at 2021–22, would have to be adjudicated before the plaintiffs could be awarded benefits. Thus the plaintiffs' claims are sufficiently collateral to their benefit claims to justify waiver.

Furthermore, the futility test is met under the circumstances of this case. As the district court correctly noted,

> [t]he experience of the two named plaintiffs, who did exhaust, illustrates the futility of exhaustion—the Secretary's published policies are not likely to be influenced or changed by the administrative appeals of any single individual; thus the issue is unsuited to resolution in the hearing process. That the challenged policies are published both in the federal regulations and in Social Security Rulings further suggests the final nature of the Secretary's position. Finally, the validity of the policies challenged here has been raised in other litigation, giving the Secretary an ample opportunity to reconsider [but] she has not done so.

*Johnson v. Heckler*, 100 F.R.D. at 74 (citations omitted).

■ The Secretary's second jurisdictional argument arises from the sixty-day provision of section 205(g) of the Act which provides that claimants must seek judicial review of the final decisions of the Secretary "within sixty days after the mailing ... of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g) (1982). The district court rejected the Secretary's claim, raised for the first time on her motion to alter or amend the court's order, that the sixty-day provision was an absolute juris-

dictional bar to the plaintiffs' suit because some claimants did not seek the administrative or judicial review necessary to meet the sixty-day requirement. The district court reasoned that the sixty-day provision is a statute of limitations waivable by the parties and that the Secretary did not sufficiently raise the sixty-day provision as a defense in order to preserve it. We affirm the district court's reasoning.

The Supreme Court has ruled in two cases that the sixty-day limitation is not jurisdictional, *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), but "is waivable by the parties." *Eldridge,* 424 U.S. at 328 n. 9, 96 S.Ct. at 899 n. 9. This court has followed *Salfi, see Wilson v. Edelman,* 542 F.2d 1260, 1274 (7th Cir.1976), as have other circuits, *see, e.g., City of New York v. Heckler,* 742 F.2d 729, 737–38 (2d Cir.1984); *Lopez v. Heckler,* 725 F.2d 1489, 1508 (9th Cir.), *vacated on other grounds,* —— U.S. ——, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984); *Mental Health Ass'n of Minnesota v. Heckler,* 720 F.2d 965, 973 n. 19 (8th Cir. 1983).

Under the Federal Rules of Civil Procedure, Rule 8(c) and 12(h)(1), a party must raise a statute of limitations defense in the answer or other responsive pleadings. Failure to raise the defense results in its waiver. 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL 1278 (1985 Supp.). The Secretary did not raise the sixty-day defense in her answer. She in fact admitted in the second paragraph of her answer that the court had jurisdiction under § 405(g), and in her memorandum in opposition to class certification she focused only on the plaintiffs' failure to exhaust administrative remedies. The district court properly held therefore that the Secretary had waived the statute of limitations defense.

### III. THE STEP TWO SEVERITY REGULATION

The Social Security Act is one of the most important and far-reaching enactments ever passed by Congress, affecting the life of almost every American. The Act is subject to constant amendment in the light of the changing socioeconomic conditions of our society, and is composed of numerous specialized programs, two of which are involved in this case: Old Age, Survivors and Disability Insurance (OASDI), Title II, 42 U.S.C. §§ 401 *et seq.,* and Supplemental Security Income for the Aged, Blind, and Disabled (SSI), Title XVI, 42 U.S.C. §§ 1381 *et seq.* The SSI program grew out of state-administered programs and is not an offshoot of OASDI; generally speaking, SSI provides additional income to disabled recipients who are in some cases able to work despite the continuation of their impairments. Despite the differences in the two programs, *see generally,* H.REP. NO. 98–618, 98 Cong.2d Sess. (1984), *reprinted in* 1984 U.S.CODE CONG. & AD.NEWS 3038, 3065–71, they nonetheless share a common definition of disability.

Both OASDI and SSI provide that

(1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

(2) For purposes of paragraph (1)(A)—

(A) an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence

... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(1)(A), (2)(A) & 42 U.S.C. § 1382c(a)(3)(A), (B) & (C). The definition of disability as defined in 42 U.S.C. § 423(d)(1)(A) was first promulgated in 1954, and was incorporated into the full-fledged disability insurance program created in the Social Security Amendments of 1956, P.L. 84–880. *See* H.REP. NO. 7225, 84th Cong., 2d Sess. (1956), U.S.Code Cong. & Admin.News 1956, p. 3877. The further definition of eligibility for disability insurance provided in 42 U.S.C. § 423(d)(2)(A) was added in 1967. S.REP. NO. 744, 90th Cong., 1st Sess. 46–50, *reprinted in* 1967 U.S.CODE CONG. & AD.NEWS 2834, 2880–83. For a thorough discussion of the history of the disability provisions, see *Stone v. Heckler,* 752 F.2d 1099, 1104–05 (5th Cir.1985), and *Chico v. Schweiker,* 710 F.2d 947, 948–49 (2d Cir.1983).

Pursuant to this history and statutory definition the courts of all twelve circuits have unanimously held that, while the ultimate burden of proving disability lies with the claimant, the plaintiff makes a prima facie showing when he demonstrates an impairment which prevents him from performing his previous work. The burden then shifts to the Secretary to show that the claimant remains capable of performing other work in view of the vocational factors of age, education, and work experience: "[o]nce an impairment of sufficient severity is demonstrated ... which precludes the type of work previously engaged in, the burden of going forward shifts to the Secretary." *Whitney v. Schweiker,* 695 F.2d 784, 786 (7th Cir.1982). *See also Francis v. Heckler,* 749 F.2d 1562, 1564 (11th Cir. 1985); *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984); *Smith v. Califano,* 592 F.2d 1235, 1236–37 (4th Cir.1979); *O'Banner v. Secretary,* 587 F.2d 321, 323 (6th Cir.1978); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978); *Hall v. Secretary,* 602 F.2d 1372, 1375 (9th Cir.1979); *Lewis v.*

*Weinberger,* 515 F.2d 584, 587 (5th Cir. 1975); *Hernandez v. Weinberger,* 493 F.2d 1120, 1123 (1st Cir.1974); *Stark v. Weinberger,* 497 F.2d 1092, 1097–98 (7th Cir. 1974); *Garrett v. Richardson,* 471 F.2d 598, 603–04 (8th Cir.1972); *Choratch v. Finch,* 438 F.2d 342, 343 (3d Cir.1971); *Meneses v. Secretary,* 442 F.2d 803, 807 (D.C.Cir.1971). All the circuits agree that it is the language of the Act itself which requires "that disability determinations be made according to a two-step process," *Valencia v. Heckler,* 751 F.2d 1082, 1086 (9th Cir.1985), with the first step placing the burden on the claimant to demonstrate an inability to perform past work.

The plaintiffs' argument is, therefore, apparent: the Secretary's step two policies on their face violate the Act because they deny benefits even to the plaintiff who has carried his prima facie burden and permit the denial of benefits at step two where the claimants' impairment does not significantly impair the claimant's physical or mental ability to do basic work activities. On its face, the plaintiffs argue, this regulation is not designed to determine whether the claimant can meet, or has met, his prima facie burden of proving his inability to do his own past work. The Secretary has promulgated a list of twenty illustrative impairments to be considered *per se* non-severe under step two. *See* SSR 82–55. The Secretary denies benefits to claimants with these impairments regardless of whether they have shown an inability to do their past work. The Secretary's ruling confirms this interpretation: step two permits the denial of benefits "even though [the impairment] may prevent the individual doing work that the individual has done in the past." SSR 82–56.

Plaintiffs argue, moreover, that step two does not provide for the individualized assessment of disability guaranteed by the Act. The Act provides that an individual will be found disabled when his "physical or mental impairment or impairments are of such severity that *he* is not only unable to do *his* previous work, but cannot, considering *his* age, education, and work experi-

ence, engage in any other kind of substantial gainful work...." 42 U.S.C. §§ 423(d)(2) & 1382c(a)(3)(B) (emphasis added). The Supreme Court has recognized that "disability hearings will be individualized determinations." *Heckler v. Campbell*, 461 U.S. 458, 467, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983). Step two, by contrast, permits the Secretary to label a claimant as not disabled, even though his impairments *in fact* prevent *him* from doing *his* past work. Such summary dispositions were in fact made in the cases of the two named plaintiffs in this case.

The plaintiffs suggest that if the second step merely screened out claimants whose impairments were so slight or "de minimus" that they could never prevent any claimant from doing his past work, the second step would in fact comport with the Act. Several circuits have in fact interpreted step two to permit a denial of benefits only when disabilities are "de minimus." In *Taylor v. Schweiker*, 739 F.2d 1240 (7th Cir.1984), this circuit seemed to characterize the step two severity test as an "initial screening device which eliminates [claims] ... only when the limitations alleged ... can be viewed as slight." *Taylor*, 739 F.2d at 1243 n. 2. The court in *Taylor* reversed the ALJ's finding of non-severity and remanded the case because the Secretary's second step test had precluded consideration of evidence that might have established the claimant's disability.

Similarly construing step two to permit only a "de minimus" assessment, the Fifth Circuit stated:

> we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used. Unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration.

*Stone v. Heckler*, 752 F.2d 1099, 1106 (5th Cir.1985). *See also Brady v. Heckler*, 724 F.2d 914 (11th Cir.1984). *Cf. Delgado v. Heckler*, 722 F.2d 570 (9th Cir.1983) (acknowledging without deciding the potential conflict between the regulations and the statutory burden of proof); *Chico v. Schweiker*, 710 F.2d 947 (2d Cir.1983) (same). Plaintiffs argue, however, that the Secretary's regulations do not utilize and in fact do not permit a "de minimus" reading and therefore must be invalidated.

The Secretary argues on appeal that her broad authority to regulate permits her to adopt step two, that for the policy reason of promoting efficiency step two is necessary, and, finally, that Congress through the 1984 Amendment to the Act "endorsed the workings of the sequential evaluation process." Appellant's Br. at 29. It is the 1984 Amendment argument on which the Secretary relies most heavily.

Step two of the sequential evaluation process was not, however, the focal point of the 1984 Amendment, contrary to the Secretary's sweeping assertions. To the extent that Congress in the 1984 Amendment addressed step two, Congress disapproved of the Secretary's "severity" regulations and relied on the upcoming revision of the evaluation process to remedy its disapproval:

> The Committee is concerned that the consideration of eligibility for disability benefits be conducted using criteria that clearly reflect the intent of Congress that all those who are unable to work receive benefits. It is of particular concern that the Social Security Administration has been criticized for basing terminations of benefits solely and erroneously on the judgment that the person's medical evaluation is "slight," according to very strict criteria, and is therefore not disabling, without making any further evaluation of the person's ability to work.

> The Committee believes that in the interests of reasonable administrative flexibility and efficiency, a determination that a person is not disabled may be based on a judgment that the person has no impairment, or that the impairment or

combination of impairments are slight enough to warrant a presumption that the person's work ability is not seriously affected. The current "sequential evaluation process" allows such a determination, and the committee does not wish to eliminate or seriously impair use of that process. However, the Committee notes that the Secretary has already planned to reevaluate the current criteria for non-severe impairments, and urges that all due consideration be given to revising those criteria to reflect the real impact of impairments upon the ability to work.

H.REP. NO. 98–618, 98th Cong., 2d Sess. 7–8, *reprinted in* 1984 U.S.CODE CONG. & AD.NEWS 3044–45. The House Report reflects a Congressional suspicion that the Secretary's step two regulations did not comport with the original intent of the Social Security Act, but stops short of condemning the regulations, relying instead on the Secretary's promised reevaluation of the regulations. The suspicion evidenced in the House Report's analysis of step two is derivative of the general purpose of the 1984 Amendment, which was to help "insure that no beneficiary loses eligibility for benefits as a result of careless or arbitrary decision making by the Federal government." *Id.* at 3039. The theme of the 1984 Amendment was in fact remedial. Noting that it was "deeply concerned about the erosion of public faith and confidence in the social security disability programs," *id.*, the committee expressed hope that the 1984 Amendment would ensure that "the program will be administered according to the law, rather than by constantly shifting and possibly arbitrary policies." *Id.* at 3040.

■ The legislative history of the 1984 Amendment cuts against, rather than supports, the Secretary's arguments in this case. The House Report supports at least a "de minimus" interpretation of the regulation and at most evidences a skepticism about the over-all validity and workability of the step two severity regulation. The Secretary cites no substantive responsive legislative history of the 1984 Amendment to the contrary. Thus we are convinced that Congress did not in the 1984 Amendment "endorse" step two and, to the contrary, expressed disapproval of the regulation. Moreover, on its face, the step two severity regulation conflicts with the Social Security Act's purposes and the plain language of the statute's definitions of disability.

■ The Secretary's argument that step two is a reasonable exercise of her broad rule-making authority necessary to the proper and efficient functioning of "an already overburdened agency," Appellant's Br. at 34, *quoting Heckler v. Campbell*, 461 U.S. at 468, 103 S.Ct. at 1958, is a fall-back argument merely, and a thoroughly unpersuasive one. The district court rejected the Secretary's reliance on her broad rule-making authority, reasoning that, to merit deference, the Secretary's regulations and rules must be consistent with the Act. The district court's conclusion is firmly grounded in the law: an agency's "interpretation of the statute cannot supercede the language chosen by Congress." *Mohasco Corp. v. Silver*, 447 U.S. 807, 825, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980). *See also United States v. Larionoff*, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977). Because we have held the Secretary's regulations to be inconsistent with the statute, no deference to her rule-making authority is required.

■ The Secretary's efficiency arguments, therefore, are a totally inappropriate basis upon which to justify unlawful activity and add no support to her argument that we must defer to her statutory mandate to promulgate regulations. The extent to which the need for efficiency and an easing of the "burdens" on the ALJs affects our standard of review of disability decisions in this circuit is still a matter of debate. *Compare Stephens v. Heckler*, 766 F.2d 284 (7th Cir.1985), *with Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir.1984). *Zblewski* stresses the need for a "minimum level of articulation," *Zblewski*, 732 F.2d at 78, in ALJ findings, while *Stephens* argues that, in light of the "burdens" on the ALJs,

"sketchy opinions can be enough." *Stephens*, at 287. What is not debatable, however, is that efficiency arguments provide absolutely no basis for the Secretary to violate Congressional mandates to implement properly the disability benefits program of this nation.

In summary then, we affirm the district court's order holding that 20 C.F.R. §§ 404.1520(c) & 416.920(c) (1982), and SSR 82–55 & SSR 82–56 violated 42 U.S.C. § 423(d) and § 1382c(a)(3)(A), (B), (C), and enjoining the defendants from enforcing the step two rules and regulations. *See also Dixon v. Heckler*, 589 F.Supp. 1494 (S.D.N.Y.1984) (class action lawsuit also invalidating the step two rules and regulations); *Smith v. Heckler*, 595 F.Supp. 1173 (E.D.Cal.1984) (same). *See also Moody v. Heckler*, 612 F.Supp. 815 (C.D.Ill.1985) (single plaintiff action holding that the step two severity regulation violates the Social Security Act).

## IV. THE COMBINATION REQUIREMENT

[8] The parties agree that the 1984 Amendment specifically requires the Secretary to combine non-severe impairments at the step two stage of the sequential evaluation process in determining eligibility for disability benefits effective December 1, 1984. 50 Fed.Reg. 8726–29 (March 5, 1985). The Secretary argues that the Reform Act created this right for the first time and that therefore she should not be required to redetermine the claims of the class members denied benefits prior to December 1, 1984. In its original decision, announced before the enactment of the Reform Act, the district court held that the plain meaning of the statute as construed by other courts required the Secretary to consider the combined effect of all of the claimants' impairments and declared invalid the regulations of the Secretary which stated "we will consider the combined effects of unrelated impairments only if all are severe and expected to last 12 months." 42 U.S.C. §§ 404.1522 & 416.922. The district court also declared invalid SSR 82–55,

which states "[i]nasmuch as a nonsevere impairment is one which does not significantly limit basic work-related functions, neither will a combination of two or more such impairments significantly restrict the basic work related functions to do most jobs." In its order dated December 17, 1984, the district court refused to alter or amend its prior ruling, in light of the 1984 Amendment, holding that Congress intended to clarify the Act through the 1984 Amendment and that therefore its prior order could be applied retroactively to members of the plaintiff class. We cannot, as the Secretary now urges, find any error in either of the district court's decisions.

In determining whether the Act prior to the 1984 Amendment required impairments to be cumulated at the step two severity test of the sequential disability evaluation process, we must look "first, as always, to the language of the statute." *Heckler v. Turner*, —— U.S. ——, ——, 105 S.Ct. 1138, 1144, 84 L.Ed.2d 138 (1985). "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. American Trucking Ass'n*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). For decades, the Act has decreed that, in applying the basic definition of disability, the Secretary shall determine a claimant to be disabled "if his physical or mental impairment or *impairments* are of such severity that he is not only unable to do his previous work but cannot ... engage in any other kind of substantial gainful work." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B) (emphasis added). The Act further defines a physical or mental impairment as one that "results from ... *abnormalities* ... demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3) & 1382c(a)(3)(C) (emphasis added). The Act does not use the singular "physical or mental impairment" or "abnormality"; rather Congress, through the Act, included the possibility of multiple *"impairments"* constituting a disability.

Moreover, when the amendments to the statutory definition of disability were passed in 1968, the Secretary agreed that the Act required her to consider the combined effects of the non-severe impairments in determining whether a claimant was disabled. *See* 33 Fed.Reg. 11749, 11750 (1968), codified at 20 C.F.R. § 404.-1501(a)(1) (1969) (defining disability as "inability to engage in any substantial gainful activity by reason of ... impairment or *impairments*") (emphasis added). The "contemporaneous administrative construction of [an] Act is persuasive evidence of the original understanding." *United States v. Sheffeld Board of Commissioners,* 435 U.S. 110, 131, 98 S.Ct. 965, 979, 55 L.Ed.2d 148 (1978). Other federal courts also have construed the Act in a manner consistent with the Secretary's original construction, requiring the Secretary to consider the combined effect of non-severe impairments. *See, e.g., Brady v. Heckler,* 724 F.2d 914, 921 (11th Cir.1984); *Felshina v. Schweiker,* 707 F.2d 71, 73 (2d Cir.1983); *Camp v. Schweiker,* 643 F.2d 1325, 1333 (8th Cir.1981); *Brenem v. Harris,* 621 F.2d 688, 690 (5th Cir.1980); *Hicks v. Gardner,* 393 F.2d 299, 302 (4th Cir.1968).

The district court found that the regulations and rulings of the Secretary were contrary to the plain meaning of the statute, calling "dubious" the logic of her ruling which finds that a combination of non-severe impairments cannot be severe. *See* SSR 82–55. *Johnson v. Heckler,* 593 F.Supp. at 381. The court indicated that the "proper interpretation" of the statute required that the Secretary not "fragmentize" the impairments, but rather "treat them in combination." *Id., quoting Griggs v. Schweiker,* 545 F.Supp. 475, 477 (S.D.W. Va.1982). The court therefore declared the regulations and rulings invalid. Our analysis above confirms the correctness of the district court's conclusion.

The 1984 Amendment does not change the propriety of the court's decision, as the court correctly held in denying the Secretary's motion to alter or amend. Even if

we had only the general statements of purpose of the 1984 Amendment discussed above, the conclusion that the 1984 Amendment was meant to clarify the original interpretation of Congress that non-severe impairments must be combined to determine whether a disability exists would be obvious. As the earlier discussion indicated, the 1984 Amendment was remedial in character and intended to liberalize the present policies so as to "restore confidence" in social security programs. 1984 U.S.CODE CONG. & AD.NEWS, 98th Cong., 2d Sess. 3040. Indeed, the stated agenda of the Congress was to ensure that those disability decisions which had been made pursuant to "constantly shifting and possibly arbitrary policies" would instead be "administered according to the law." *Id.*

The specific references in the 1984 Amendment's legislative history to the amendment of the multiple impairments section confirms this general assessment of the purposes of the 1984 Amendment. In the enactment of the 1984 Amendment, the House bill was passed in lieu of the Senate bill. Section 103 of the House bill concerned the combination of impairments at step two. In its overview, the House Committee stated that "sections 101–103 of the bill are designed to *clarify* the criteria that must be used in evaluating whether new applicants or current beneficiaries are disabled. The criteria laid out in present law are few and brief." H.REP. NO. 98–618, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.CODE CONG. & AD.NEWS, 3043 (emphasis added). Moreover, "[t]here is no statutory provision concerning the consideration of the combined effects of a number of different impairments." *See also* H.CONF.REP. NO. 98–1039 at 29, *id.* at 3087. The Committee further stated that

[t]he committee further emphasizes that the foregoing discussion does not constitute any change in the current definition of disability, but rather is a *clarification* of the intent of Congress that disability

benefits should be granted to those who are unable to work because of a medically determinable impairment. Sections 101 and 103 of the bill provide statutory standards for determining disability.

H.REP. NO. 98–618. *Id.* at 3046 (emphasis added). This subsequent legislation interpreting the earlier Social Security Act is "entitled to great weight in determining the meaning of the earlier statute." *Regents of the University of California v. Bakke,* 438 U.S. 265, 349, 98 S.Ct. 2733, 2778, 57 L.Ed.2d 750 (1978). This review, therefore, of the legislative history of the 1984 Amendment convinces us that the original intent of Congress was to ensure that non-severe impairments were combined in determining whether a disability exists. The plain language of the statute yields the same conclusion. The district court's order declaring §§ 404.1522 & 416.-922 and SSR 82–55 invalid because they are inconsistent with §§ 423(d)(2)(A) & 1382c(a)(3)(B) of the Act is therefore affirmed, and the Secretary is ordered on remand to redetermine the plaintiffs' disability claims considering the effects of combining all non-severe impairments at step two of the sequential evaluation process.

In conclusion, then, we affirm the district court's denials of the Secretary's summary judgment motions on jurisdictional grounds. We also affirm the district court's order enjoining the Secretary from enforcing 20 C.F.R. §§ 404.1520(a)–.1522 & 416.920(c)–.922 and SSRs 82–55 & 82–56 insofar as they violate the Act. We affirm the district court's order directing the Secretary to hold new hearings for all class members, including the named plaintiffs, in conformance with the law as expressed in this opinion, and to reinstate benefits and/or grant retoractive benefits as is appropriate pursuant to this opinion.[2]

AFFIRMED.

**2.** Because we have found that the Secretary's regulations are inconsistent with the Act, we need not address the plaintiffs' broader constitu-

tional claims that the Secretary's regulations deny the plaintiffs due process.