819 F.2d 289
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Clarence HALCOMB, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant- Appellee.
 No. 86-5493.
 United States Court of Appeals, Sixth Circuit.
 May 27, 1987.
 
 Before KRUPANSKY and GUY, Circuit Judges, and GILMORE, District Judge.[1]
 PER CURIAM.
 
 
 1
 The heirs of claimant, Clarence Halcomb, appeal the Secretary's denial of social security disability and supplemental security income benefits.[2] Because we find that the Secretary applied an overly strict interpretation of the agency's step two severity regulation, we reverse and remand for further proceedings.
 
 I.
 
 2
 Claimant's initial claim for benefits, filed January 23, 1981, was denied by the administrative law judge (ALJ) on November 12, 1981, and this denial was upheld by the Appeals Council on January 29, 1982. Rather than initiate judicial review, claimant filed a new claim on February 16, 1982, alleging disability due to obesity, high blood pressure, and diabetes, generally the same grounds alleged in his first claim. However, during the course of the administrative proceedings on his second claim, Halcomb was evaluated for complaints of back pain and numbness and weakness in his legs. Diagnostic evaluations and x-rays confirmed severe degenerative disc disease consistent with spinal stenosis. Claimant alleged that, based on this "new and material" medical evidence, his prior claim should be reopened and reconsidered. The ALJ found that, although the recently submitted evidence was "new," the fact that it was dated October 21, 1982, rendered it immaterial to the determination of non-disability rendered in 1981, and applied the doctrine of res judicata to the prior proceeding.
 
 
 3
 Evidence adduced at the second hearing confirmed that claimant suffered from mild obstructive ventilatory defect associated with chronic bronchitis, chronic urinary tract infection with resulting pyuria and uncontinence, possible peripheral neuropathy associated with his adult onset, insulin dependent diabetes, hypertension currently under good control, bilateral carpal tunnel syndrome, prostatic hypertrophy (probably benign), and exogenus obesity. Claimant testified at the hearing that he had problems with back pain which radiated down his legs, had difficulty stopping and bending, had suffered black-outs due to his diabetes, had general weakness and numbness in both his legs which made walking and climbing stairs extremely difficult, and suffered from shortness of breath and dizziness on exertion which forced him to rest frequently.
 
 
 4
 A medical report on file prior to his hearing from claimant's treating physician, Dr. Kemp, indicated the doctor's belief that, although he would not be considered disabled by virtue of his pulmonary function studies alone, his combination of impairments would render him at least partially disabled. He went on to list his other impairments as follows: some bronchitis and emphysema, poor renal function with decreased creatine clearance, hyperglycemia which is poorly controlled due to his adult onset diabetes mellitus, poorly controlled hypertension, and chronic pyuria. A report from Dr. Lynn Owens, an orthopedic surgeon, first seen on October 21, 1982, stated that:
 
 
 5
 X-rays of his lumbosacral spine show severe degenerative disc disease from L2 to Sl with large anterior and lateral osteophytes. There is encroachment of the neuroforamina at multiple levels, with possibly a spontaneous fusion at L5-Sl .... The atrophy of the left lower extremity with the history of giving way, weakness, numbness and pain, along with the X-ray changes, support a diagnosis of spinal stenosis.
 
 
 6
 Based on these findings, Dr. Owens prescribed activity limitations against lifting over twenty-five pounds, or any repetitive motions, such as lifting, bending, twisting, or stooping. Relying on 20 C.F.R. Sec.Sec. 404.1521 and 416.921 and the guidelines in social Security Ruling 82-55,[3] the ALJ concluded that no single impairment, and therefore no combination of impairments, could be considered "severe" under the provisions of the Social Security Act.
 
 II.
 
 7
 Although claimant raises numerous issues on appeal, we address only those two which are dispositive of the case -whether the application of the principles of res judicata to Halcomb's first claim is cognizable by this court and whether substantial evidence supports the Secretary's determination that claimant's impairments were not severe.
 
 
 8
 A. The Preclusive Effect of Claimant's Initial Denial
 
 
 9
 When, following any final administrative decision denying benefits, a claimant elects to file anew claim rather than pursue judicial remedies, the Secretary may apply res judicata to the previous decision if he finds that the "same claim" was involved. 20 C.F.R. Sec. 404.957(c)(1). The procedures by which the Secretary may "reopen and revise" his decision are set forth at Sec.Sec. 404.987 through 404.996. Generally, a claimant may request a reopening of his claim at any time within twelve months of the date of the initial final determination. However, Halcomb did not request reopening but elected to file a new claim. It is the Secretary's prerogative whether to treat the new claim as a request for reopening, and this decision is not subject to judicial review under 42 U.S.C. Sec.205(g). Califano v. Sanders, 430 U.S. 99, 109 (1977).
 
 
 10
 It appears that the ALJ did consider claimant's request for reopening, but denied the request because the newly-presented evidence was not material to a disability determination for the previous period. Absent an objection that the agency's decision violated a claimant's constitutional due process rights, this court is without jurisdiction to review the Secretary's refusal to reopen his prior claim. Bagby v. Harris, 650 F.2d 836 (6th Cir.), cert. denied, 454 U.S. 1087 (1981). Since neither Halcomb's first nor his second claim alleged disability due to a spinal impairment, and the only evidence documenting such impairment dates from October of 1982, we perceive no substantial error in the ALJ's decision to bar subsequent attack on the initial denial. As a result, claimant is limited on his current claim to proving disability for a period beginning after November 12, 1981, the date of the denial of his initial claim.
 
 B. The ALJ's Conclusion of Non-Severity
 
 11
 Under the sequential disability evaluation procedure promulgated by the Secretary and codified at 20 C.F.R. Sec. 404.1520 (relating to disability benefits) and Sec. 416.920 (relating to supplemental security income benefits), the statutory test for disability is broken down into a five-step inquiry. An initial determination is made as to whether the claimant is currently engaged in substantial gainful activity; if so, the claimant must be found "not disabled." Second, the ALJ must find that the claimant has a severe impairment or impairments. A severe impairment is defined in the negative as one that "does not. significantly limit [the claimant's) physical or mental ability to do basic work activities." 20 C.F.R. Sec.Sec. 404.1521 and 416.921. If the claimant does not have a severe impairment, he is found "not disabled."
 
 
 12
 We note that in 1983, the year of claimant's disability determination by both the ALJ and the Appeals Council, the Secretary was enforcing a policy decision that unrelated impairments would not be combined in determining whether an applicant suffered a "severe" impairment.[4] It is apparent from the ALJ's decision that he considered each of claimant's ailments separately and, finding each one individually "not severe," terminated his inquiry at step two without consideration of claimant's ability to perform his past relevant work or any other work. In addition, the ALJ specifically relied on Social Security Ruling 82-55, which expressly listed impairments which, by definition, were considered non-severe.
 
 
 13
 This circuit has expressly upheld the Secretary's sequential evaluation process, including the necessity of finding a "severe" impairment' at step two of the analysis. Salmi v. Secretary of Health and Human Services, 774 F.2d 685 (6th Cir. 1985); Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). But see Baeder v. Heckler, 768 F.2d 547 (3d Cir. 1985) (step two severity regulation invalid on its face as inconsistent. with the Act); Johnson v. Heckler, 769 F.2d 1202 (7th Cir. 1985), cert. filed, February 27, 1986, No. 85-1422 (same); Brown v. Heckler, 786 F.2d 870 (8th Cir. 1986) (same); Yuckert v. Heckler, 774 F.2d 1365 (9th Cir. 1985), cert. granted, 106 S. Ct. 1967 (argued Jan. 13, 1987) (same); Hansen v. Heckler, 783 F.2d 170 (10th Cir. 1986) (same). Although we upheld the regulation's validity, we interpreted it as requiring only a de minimus threshold showing of severity:
 
 
 14
 An impairment qualifies as non-severe only if the impairment would not affect a claimant's ability to work regardless whether the claimant was sixty years old or only twenty-five, whether the claimant had a sixth grade education or a master's degree, whether the claimant was a brain surgeon, a factory worker, or a secretary. We hold that an impairment qualifies as non-severe only if, regardless of a claimant's age, education, or work experience, the impairment would not affect the claimant's ability to work.
 
 
 15
 Salmi, 774 F.2d at 691-92. We pointed out in Farris that "the second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." 773 F.2d at 89 (emphasis added). In light of these pronouncements, it is clear that the Secretary misapplied the step two regulation in this case.
 
 
 16
 Morever, we observe that SSR 82-55, which ostensibly permitted the Secretary to combine impairments only when all were deemed "severe,"[5] has been "obsoleted without replacement" by Ruling 85-III-II. Furthermore, we note that the Secretary issued Social Security Ruling 85-28 in October of 1985 which states that the step two severity requirement would henceforth be interpreted as a de minimus policy to screen out baseless claims.
 
 
 17
 In light of the foregoing, we REVERSE the district court order dismissing claimant's complaint and REMAND the case with instructions to the district court to order remand to the Secretary for completion of the sequential evaluation process.
 
 
 
 [1]
 Honorable Horace W. Gilmore, United States District Court, Eastern District of Michigan, sitting by designation
 
 
 [2]
 According to an affidavit filed with the district court, claimant apparently died of cancer on February 14, 1985
 
 
 [3]
 The examples given in SSR 82-55 of per se non-severe impairments include, inter alia, osteoarthritis corroborated by x-ray findings with the symptoms of pain and stiffness, hypertension, history of chest pain, colostomy, peptic ulcer, chronic liver disease, chronic renal disease, diabestes mellitus, epilepsy, and IQ of 80 or greater. The ruling emphasizes a national, generic concept of the level of health required for most jobs; "to be found disabled, an individual must have a severe medically determinable impairment. That standard cannot be satisfied by any impairment(s) that is compatible with the ability to perform basic work-related functions as required in most of the numerous jobs in the national economy." SSR 82-55
 
 
 [4]
 The relevant portion of pre-1984 Sec. 404.1522 stated: "We will consider the combined effects of unrelated impairments only if all are severe and expected to last 12 months." (Emphasis added). The regulation, as amended, now reads:
 (b) Concurrent Impairments . If you have two or more concurrent impairments which, when considered in combination, are severe, we must also determine whether the combined effect of your impairments can be expected to continue to be severe for 12 months.
 (Emphasis added).
 
 
 [5]
 The Secretary explained his rationale for this change in policy as follows:
 Inasmuch as a non-severe impairment is one which does not significantly limit basic work-related functions, neither will a combination of two or more such impairments significantly restrict the basic work-related functions needed to do most jobs.
 SSR 82-55. As one court phrased it, "[i]n much the same way, a mathematician might prove that because two does not equal four, two plus two never equals four either." Dixon v. Heckler, 589 F. Supp. 1494, 1508 (S.D.N.Y. 1984).