**Michael R. DeROBERTIS, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

No. 88 C 6956.

United States District Court, N.D. Illinois, E.D.

June 27, 1989.

Harold William Conick, Wheaton, Ill., for plaintiff.

Anton R. Valukas, U.S. Atty. by John S. Brennan, Asst. U.S. Atty., Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

The sole issue in this Social Security case is whether the Administrative Law Judge ("ALJ") erred in determining the onset date of plaintiff's disability. The ALJ ruled that the onset date of plaintiff's disability is November 7, 1986. The defendant, Secretary of the United States Department of Health and Human Services ("the Secretary"), adopted the ALJ's ruling. Plaintiff Michael R. DeRobertis then filed this action, pursuant to Section 205 of the Social Security Act, 42 U.S.C. Section 405(g), to obtain judicial review of the Secretary's decision. DeRobertis claims that the onset date of his disability is April 13, 1985. Both DeRobertis and the Secretary have moved for summary judgment. For the reasons stated herein, the Secretary's motion for summary judgment is granted, and DeRobertis' motion for summary judgment is denied.

## FACTS

DeRobertis was born on February 28, 1940. He has an eighth grade education and no transferable work skills. From March 15, 1985 through April 12, 1985, he was employed as a steam jacket kettle maker. On April 13, 1985, DeRobertis suffered an acute myocardial infarction ("heart attack") for which he remained hospitalized for ten days. As a result of this condition, DeRobertis was put through a series of tests which revealed that he also suffers from a hiatal hernia and gastritis. In addition, he has been diagnosed as suffering from mild depression. He has not worked at any job since his heart attack.

On May 29, 1985, DeRobertis filed applications with the Social Security Administration ("SSA") for disability insurance benefits and supplemental security income ("SSI"). DeRobertis' applications alleged April 13, 1985, as the onset date of his disability. These applications were denied initially and again upon reconsideration. DeRobertis then appealed the denial of his applications to the SSA's Office of Hearings and Appeals, which assigned his case to an ALJ for a hearing on DeRobertis' disability claims.

Under Social Security regulations, the ALJ was required to employ the following five-step analysis in determining whether DeRobertis was disabled: [1]

(1) If the claimant is doing "substantial gainful activity," he is not disabled;

(2) If the claimant does not have a "severe impairment," he is not disabled;

(3) If the claimant has an impairment or impairments medically equivalent to one of the impairments listed in Appendix 1 to the Social Security regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"), then he is disabled;

(4) If the claimant's residual functional capacity ("RFC") allows him to perform his past work, he is not disabled;

(5) If, considering the claimant's age, education, past work experience, and RFC, the claimant cannot perform other work available in the national economy, he is disabled.

20 C.F.R. § 404.1520 (1988). Applying this test,[2] the ALJ held that as of November 7,

---

**1.** The steps are applied sequentially; however, if a finding of "disabled" or "not disabled" is made at any step, the remaining steps are not employed. 20 C.F.R. §§ 404.1520(a), 416.920(a).

**2.** Actually, the ALJ, relying on the Seventh Circuit's decision in *Johnson v. Heckler*, 769 F.2d

1202 (7th Cir.1985), refused to employ Step 2 of the test. Subsequent to the Seventh Circuit's *Johnson* decision, however, the Supreme Court held that the severity requirement in Step 2 is valid. *Bowen v. Yuckert*, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987). The Supreme Court then remanded the *Johnson* case. *Bowen v.*

1986, DeRobertis was disabled under Step 3 of the regulations. The ALJ found that on that date, DeRobertis' impairments equalled the listing for ischemic heart disease in Appendix 1 to the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

However, the ALJ rejected DeRobertis' claim that he was disabled during the period from April 13, 1985 to November 7, 1986. The ALJ found no medical evidence to support a finding that DeRobertis' impairments met any of the listings in Appendix 1 to the regulations prior to November 7, 1986. In addition, the ALJ found that DeRobertis retained both the mental and physical capacities to perform sedentary work even after suffering his heart attack. Thus, employing Steps 3 and 5 of the regulations, the ALJ concluded that prior to November 7, 1986, DeRobertis was not disabled.

## DISCUSSION

On appeal, DeRobertis claims the ALJ erred in ruling that he was not disabled under Step 5 of the regulations during the period from April 13, 1985 to November 7, 1986.[3] Essentially, DeRobertis argues that the record is void of sufficient evidence to support the ALJ's finding that he had the physical capability to perform sedentary work during that period.[4] In reviewing that finding of the ALJ, this court's task is simply to decide whether the ALJ's determination is supported by substantial evidence in the record. 42 U.S.C. § 405(g). *See Zalewski v. Heckler,* 760 F.2d 160, 162–63 (7th Cir.1985). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971). Substantial evidence may be

less than the weight of the evidence, and a finding may be supported by substantial evidence even if the court might have reached another conclusion. *Delgado v. Bowen,* 782 F.2d 79, 83 (7th Cir.1986).

In this case, the ALJ's finding that DeRobertis could perform sedentary work during the period from April 13, 1985 to November 7, 1986, is supported by substantial evidence in the record. The Social Security regulations provide that "sedentary work" does not involve lifting more than ten pounds at a time, almost always entails work performed indoors, and generally requires the worker to sit for the bulk of the work day, although a certain amount of standing and walking is sometimes necessary to carry out the job. 20 C.F.R. § 404.1567(a), 416.967(a) (1988). The majority of the medical evidence in the record indicates that DeRobertis could perform these tasks even after his heart attack.

First, Dr. Douglas M. Gover, a state medical consultant, determined that the separate treadmill exercise tests which DeRobertis underwent on April 17, 1985, and November 7, 1985, both indicated that DeRobertis had the ability to perform medium work. Dr. Gover's report asserted that in the absence of contrary medical evidence, these treadmill tests remained relevant indicators of DeRobertis' physical capacilities for one year after being given. Thus, according to Dr. Gover's analysis, DeRobertis remained capable of medium work until November 7, 1986.

Second, two separate residual functional capacity ("RFC") assessments indicate that DeRobertis had the capability for medium work during the relevant time period. On September 9, 1985, Dr. Vidyanadala indicated in his RFC assessment that DeRobertis had the ability to frequently lift or carry

*Johnson,* 482 U.S. 922, 107 S.Ct. 3202, 96 L.Ed. 2d 690 (1987). In light of these Supreme Court decisions, which were rendered in June 1987, the ALJ should have applied Step 2 when evaluating DeRobertis' claims in January 1988. Fortunately, since the severity of DeRobertis' impairments was not at issue in DeRobertis' claims, the ALJ's failure to apply Step 2 did not affect the outcome of this case.

3. DeRobertis does not argue that he was disabled under Step 3 prior to November 7, 1986. Indeed, there is no medical evidence which would support such an argument.

4. The record shows that DeRobertis met the mental capacity, education, and age requirements for sedentary work during the relevant period. Thus, the only question is whether DeRobertis had the ability to meet the physical requirements of such work during that period.

twenty-five pounds, to stand, walk, or sit for up to six hours in an eight-hour day, and to perform normal physical activities without limitation. Dr. E.W. Donelan reached the same conclusions in his RFC assessment almost a year later on August 21, 1986.

In addition, the report of one of the physicians who treated DeRobertis is consistent with the finding that DeRobertis could perform sedentary work after his heart attack. Dr. Louis McKeever, a cardiologist who examined DeRobertis, issued a statement on February 3, 1987, in which he represented that "[DeRobertis] has been advised not to lift anything over twenty-five pounds and should avoid being out in the cold weather." These restrictions do not prevent DeRobertis from performing sedentary work. In fact, Dr. McKeever's statement implies that DeRobertis can lift up to twenty-five pounds, which suggests that DeRobertis had the capacity to perform sedentary work. Moreover, Dr. McKeever's statement does not mention any other restrictions or limitations on DeRobertis' physical activities which would prevent DeRobertis from performing the tasks required in sedentary work.

Despite this evidence, DeRobertis claims that the ALJ should have found that he was unable to do sedentary work as of April 13, 1985. The primary evidence on which DeRobertis relies to support this argument are the statements of one of his treating physicians, Dr. Harcharan Kalsi. As early as August 29, 1985, Dr. Kalsi stated, in a letter addressed "To Whom It May Concern," that DeRobertis was "unable to do any kind of work." Dr. Kalsi later repeated this statement in a similar letter dated May 8, 1986. These statements by Dr. Kalsi, however, lack credibility because they are inconsistent with Dr. Kalsi's prior written diagnoses of DeRobertis. On July 1, 1985, Dr. Kalsi completed a medical report in which he was required to "describe [DeRobertis'] ability to do work related activities such as sitting, standing, moving about, lifting, carrying, [and] handling objects...." Dr. Kalsi responded, "*None impaired* but gets short of breath." (Emphasis added.) Dr. Kalsi completed a similar report on DeRobertis' condition on August 26, 1985, just three days prior to his initial proclamation that DeRobertis was "unable to do any work." In the August 26 report, Dr. Kalsi declared only that DeRobertis was "unable to do any *strenuous* work." (Emphasis added.) Both of these reports fail to provide any indication that Dr. Kalsi considered DeRobertis unable to do sedentary work; in fact, they suggest the exact opposite. Therefore, Dr. Kalsi's subsequent letters contradicting these reports are not credible, especially in light of the fact that the letters provide no explanation for Dr. Kalsi's apparent change of opinion.

DeRobertis claims that an onset date of April 13, 1985, is further supported by his own testimony during the hearing before the ALJ. At the hearing, DeRobertis testified that during the relevant period, he experienced shortness of breath and chest pains, particularly in extreme warm or cold weather, and that he was able to sit for only two hours at a time. After considering the medical record, however, the ALJ found DeRobertis' testimony less than credible. On appeal, the ALJ's credibility determination must be upheld unless it is "patently wrong in view of the cold record." *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986). In the instant case, in light of the medical evidence contradicting DeRobertis' testimony, including the report of one of DeRobertis' treating physicians, Dr. McKeever, this court cannot find the ALJ's credibility determination patently wrong. Therefore, DeRobertis' testimony does not establish an earlier onset date.

One final document apparently supports DeRobertis' position. On November 17, 1987, Dr. Douglas Witham, one of DeRobertis' treating physicians, issued a statement declaring his opinion that DeRobertis had been disabled as of April 1985. Since this statement is wholly conclusory, however, it is not entitled to great weight. *See Veal v. Bowen*, 833 F.2d 693, 699 (7th Cir.1987). Therefore, like the statements of Dr. Kalsi and DeRobertis, Dr. Witham's declaration does not establish that the ALJ

erred in finding an onset date of November 7, 1986.

## CONCLUSION

Since the record contains substantial evidence to support the ALJ's finding that DeRobertis could perform sedentary work during the period from April 13, 1985 to November 7, 1986, the court will not disturb the ALJ's determination that the onset date of DeRobertis' disability is November 7, 1986. Accordingly, the Secretary's motion for summary judgment is granted, and DeRobertis' motion is denied.

IT IS SO ORDERED.