Betty F. ROUSEY, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 84–2733.

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1985.

Decided Aug. 27, 1985.

Theodore F. Smith, Jr., Anderson, Ind., for plaintiff-appellant.

Rosemary Rodriguez, Asst. U.S. Atty. (John Daniel Tinder, U.S. Atty.), Indianapolis, Ind., for defendant-appellee.

Before BAUER and POSNER, Circuit Judges, SWYGERT, Senior Circuit Judge.

BAUER, Circuit Judge.

Betty F. Rousey brought this action in the district court under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the Secretary's final decision denying her application for Social Security disability benefits. The district court affirmed the denial. For the reasons set forth below, we reverse.

I

Mrs. Rousey was born January 15, 1926. She worked as a teleprinter for Western Union from 1967 to 1972, when the office in which she worked closed, and as a surgery clerk from August 1973 to July 1981, when she quit because of breathing problems and disagreements with a supervisor.

Mrs. Rousey is five feet tall and weighs 97 pounds. Mrs. Rousey testified at the hearing before the ALJ that she has a high school education, training at Western Union and a couple of courses at Ivy Tech. She lives in a two story house, in which she sleeps on the second floor and she climbs the stairs once a day, stopping on the landing to rest. Mrs. Rousey stated that she smokes one-half pack of cigarettes per day even though her doctor says that it is bad for her.

Mrs. Rousey testified that she can sit indefinitely if she is not using her arms or is not talking. If she does use her arms or is talking, she can sit one hour. She can stand for one hour and walk less than one block. Mrs. Rousey said that she can lift five pounds occasionally. She testified that her dexterity and fine finger movements were okay but that she could not reach over her head or perform pushing and pulling movements. Mrs. Rousey could bend and squat occasionally. She can drive a car ten to twenty miles at a time but stated that getting in and out of the car makes her short of breath.

Regarding her daily activities and hobbies, Mrs. Rousey stated that she gets up at 9:00 to 9:30 a.m., eats breakfast and gets dressed. She then tries to do the dishes but, if there are a lot of dishes, she has to rest between doing dishes. Mrs. Rousey then reads or watches television. She cooks occasionally. She puts clothes in the washer if someone carries it for her. Mrs. Rousey grocery shops with her husband but carries no groceries. She can dust a little bit and make her bed on occasion. Mrs. Rousey testified that the worst time for her was in the morning but that if she stays home that she gets better as the day goes on.

Mrs. Rousey's daughter also testified at the hearing. She testified that her mother's condition has gone steadily downhill. She stated that walking across the room makes Mrs. Rousey short of breath, that her mother cannot pick up a small child and

that hanging clothes or going to the bathroom makes Mrs. Rousey short of breath.

Extensive medical evidence was presented, all of which showed that Mrs. Rousey had a restrictive and obstructive pulmonary defect, although there was some medical disagreement as to the severity of the defect. Several diagnostic pulmonary function tests were administered with results close to the values listed in Appendix 1 of the disability regulations. 20 C.F.R. Part 404, Subpart P, App. 1. There was also some medical evidence suggesting either arteriosclerotic heart disease or congestive heart failure.

Dennis Fast, M.D., Mrs. Rousey's treating physician, submitted a report dated January 8, 1982, in which he stated that Mrs. Rousey experienced shortness of breath walking across a room. He noted that Mrs. Rousey has dull, squeezing chest pain of cardiac origin which lasted a few minutes, which did not radiate, which was precipitated by exertion and which was relieved in one to two minutes by rest and nitroglycerin. Dr. Fast observed that Mrs. Rousey had experienced dyspnea, fatigue, and rhythm disturbances for more than three months. Dr. Fast reported that he had restricted Mrs. Rousey from smoking and that she could engage in activity "as tolerated."

Dr. Fast again reported on Mrs. Rousey's condition on January 11, 1982. Dr. Fast stated that he had first seen Mrs. Rousey on September 21, 1981, at which time she had an acute worsening of shortness of breath which began on September 20, 1981. Dr. Fast opined, based on a comparison of EKG reports from September 20, 1981, and October 31, 1981, that the September 1981 shortness of breath was "probably" due to a "silent myocardial infraction." He noted that Mrs. Rousey had developed dull substernal chest pain which does not radiate and which is precipitated by exertion. Dr. Fast stated that Mrs. Rousey had been placed on long standing nitrates with a "marked" lessening of the occurrence of chest pain. Dr. Fast observed that Mrs. Rousey is short of breath on walking across the room and that she could perform housework slowly and with frequent rests. He stated that Mrs. Rousey could perform activity as tolerated. Finally, Dr. Fast opined that her pulmonary functions were consistent with a mild restrictive and severe obstructive defect.

Martin Fritzhand, M.D., submitted a report of a consultative examination which he had performed on Mrs. Rousey on September 18, 1982. Dr. Fritzhand noted that Mrs. Rousey reported a four to five year history of shortness of breath increasing in severity in the past 12 months. He stated that she could walk on level ground no more than 100 feet without shortness of breath, which increased on climbing stairs or walking up grades. Mrs. Rousey was able to do housework without dyspnea and did not awaken at night with shortness of breath. Mrs. Rousey experienced prolonged episodes of general aching pain throughout the anterior chest wall which he determined was unassociated with position or exercise. His final diagnosis was chronic obstructive pulmonary disease and possible arteriosclerotic heart disease.

Mrs. Rousey was admitted to St. John's Medical Center on September 23, 1982, in acute respiratory failure with chronic obstructive pulmonary disease and congestive heart failure. She was hospitalized until September 29, 1982. Chest x-ray showed evidence of pulmonary emphysema and a healed primary complex on the right. Mrs. Rousey was placed on medication and inhalation treatments and steadily improved.

R.D. Kracke, M.D., Mrs. Rousey's treating doctor, submitted a report on September 30, 1982, in which he diagnosed chronic obstructive pulmonary disease, congestive heart failure and acute respiratory failure. Dr. Kracke first saw Mrs. Rousey on July 20, 1982, and noted a resting shortness of breath and that she was unable to walk across the room due to breathing difficulties. On October 8, 1982, Dr. Kracke still observed a resting shortness of breath and again noted respiratory distress on February 8, 1983. Dr. Kracke concluded his re-

port with the opinion that Mrs. Rousey would be unable to be gainfully employed.

Mrs. Rousey alleged in her claim application that she was disabled due to breathing problems caused by any exertion and chest pain due to heart problems. The Administrative Law Judge, who conducted a *de novo* review of Mrs. Rousey's application, determined that Mrs. Rousey had the following impairments: severe chronic obstructive pulmonary disease and coronary artery disease. The ALJ determined that Mrs. Rousey did not have an impairment or combination of impairments which meet or are equal to one listed in Appendix 1. The ALJ found that Mrs. Rousey's allegations as to the severity of her chest pain were not credible because she continues to smoke. Finally, the ALJ determined that Mrs. Rousey's impairments did not prevent her from performing her past relevant work as a teleprinter and was, therefore, not disabled.

## II

Mrs. Rousey first challenges the denial of benefits on the ground that she cannot be found disabled simply because she continues to smoke a half-pack of cigarettes a day. The ALJ concluded that Mrs. Rousey had a severe impairment with pulmonary function test results close to meeting the requirements in Appendix 1. But he also concluded that she could not receive benefits because she "continues to smoke up to one-half pack of cigarettes a day although warned not to do so by her doctor. Accordingly, she is not following prescribed treatment." ALJ decision at 6. This decision was made in apparent reliance on 20 C.F.R. § 404.1530, which provides that

(a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.

(b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you

are already receiving benefits, we will stop paying you benefits.

■■■ The ALJ's decision in this case to deny benefits is not supported by substantial evidence and is in violation of the regulations. Essential to a denial of benefits pursuant to Section 404.1530 is a finding that if the claimant followed her prescribed treatment she could return to work. No such finding was made in this case. Indeed, the evidence in the record is to the contrary. Dr. Kracke, Mrs. Rousey's personal physician, concluded in a 1983 report that it was his opinion, after consulting with a pulmonary specialist, that "optimum medical management is unable to restore any significant degree of respiratory function." Admin.R. at 175. None of the other physicians who submitted evidence in this case stated that Mrs. Rousey would be restored to a non-severe condition if she quit smoking her half-pack of cigarettes. As this court stated in *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir.1984), "[i]t is absolutely essential for meaningful appellate review" for the ALJ to expressly articulate his reasons "for crediting or rejecting particular sources of evidence." *Id.* at 79. Thus we cannot assume that the ALJ rejected Dr. Kracke's diagnosis as incredible, especially where there is no evidence in the record to the contrary.

■■■ The Secretary argues that we can affirm the ALJ nonetheless because "[t]he adverse effect of smoking on chronic obstructive pulmonary disease is well documented." Appellee's br. at 14. But this argument ignores the reality of the Secretary's role in making disability determinations. These decisions must be based on testimony and medical evidence in the record or on the regulations. The ALJ cannot make his own independent medical determinations about the claimant. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir.1982). It was therefore improper for the ALJ to make his own determination regarding the prognosis of recovery should Mrs. Rousey stop smoking, when the record was devoid of any evidence that she could return to work if she quit smoking.

■ Similarly it was illogical for the ALJ to conclude in his findings that Mrs. Rousey's "allegations as to the severity of her chest pain is not credible in light of the fact that it does not prevent her from continuing to smoke a half-pack of cigarettes a day." Finding 4, Decision at 7. Mrs. Rousey's medical diagnosis was that the chest pains were the result of her severe chronic obstructive pulmonary disease and her coronary artery disease. The record is also clear that her chest pains were the direct result of exertion. None of the medical evidence linked her chest pain directly to the smoking of cigarettes and it was not proper for the ALJ to independently construct that link. We therefore conclude that on the record before us it was improper for the ALJ to deny benefits on the basis of Mrs. Rousey's failure to discontinue smoking a half-pack of cigarettes a day.

### III

■ Mrs. Rousey next contends that the Secretary improperly concluded that she is able to return to her former work as a teleprinter for Western Union. Mrs. Rousey's first claim of error in this respect is that the ALJ's decision is inconsistent with our decision in *Strittmatter v. Schweiker*, 729 F.2d 507 (7th Cir.1984). We agree.

In *Strittmatter* we held that before the ALJ can conclude that a disability claimant is capable of returning to her former work, the ALJ is "required to determine the physical demands of the particular type of sedentary work that this claimant has done and then compare those demands to her present capabilities." 729 F.2d at 509. No such analysis was undertaken in this case.

■ More critically, however, the ALJ determined that Mrs. Rousey could return to her former employment as a teleprinter because her "daily activities are consistent with the ability to perform at least sedentary work." ALJ Decision at 6. To affirm that conclusion, we must be able to conclude that the record as a whole contains substantial evidence to support the Secretary's findings. *Whitney v. Schweiker*,

695 F.2d 784, 786 (7th Cir.1982); 42 U.S.C. § 405(g). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support [the] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). We believe that the ALJ's conclusion that Mrs. Rousey could perform at least sedentary work is totally unsupported by the record. The regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Mrs. Rousey's testimony was set forth in detail previously in this opinion. Essentially she testified that she must rest between any sort of activities, must visit her husband in the hospital in her own wheel chair because of the exertion of walking, cannot wash all her own dishes or cook without assistance, and cannot carry groceries or laundry. These are not the activities of someone engaged in sustained sedentary work. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir.1984), we held that to reject the claimant's testimony about his or her physical condition "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." 732 F.2d at 79. The ALJ did not reject the credibility of Mrs. Rousey's statements or the diagnoses of the examining doctors who said she could not engage in much productive activity.

■ While the record might support a conclusion that Mrs. Rousey would perform "sedentary" work for very short periods of time, it does not support a conclusion that she can perform sedentary work

within the meaning of the act. If a claimant cannot perform work falling within the definition of sedentary for more than a brief period, the claimant cannot be found not disabled. *Cavitt v. Schweiker,* 704 F.2d 1193, 1195 (10th Cir.1983). *Cf. Johnson v. Harris,* 612 F.2d 993, 998 (5th Cir. 1980) ("[A] physical limitation which prevents a claimant from working a full work day, minus a reasonable time for lunch and breaks, constitutes a disability within the meaning of the Act."). Thus we conclude that the ALJ's conclusion that Mrs. Rousey is capable of performing sedentary work is not supported by substantial evidence on the record.

For the foregoing reasons, the judgment of the district court is reversed with instructions to remand the case to the Secretary for proceedings consistent with this opinion.

REVERSED AND REMANDED