Kimberly IWACHNIUK, Plaintiff,

v.

Shirley CHATER, Commissioner of the Social Security Administration, Defendant.

No. 95 C 5816.

United States District Court, N.D. Illinois, Eastern Division.

May 15, 1996.

Jan L. Kodner, Jan L. Kodner & Associates, Chicago, IL, for plaintiff.

James John Kubik, United States Attorney's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Kimberly Iwachniuk, applied for Supplemental Security Income ("SSI") benefits on February 6, 1992.[1] After a hearing on May 26, 1993, Administrative Law Judge ("ALJ") Irving Stillerman ruled that Ms. Iwachniuk was not under a disability and consequently denied her request for benefits. On Ms. Iwachniuk's request, the Appeals Council remanded the case to the ALJ for further proceedings. A second hearing was held on September 7, 1994, at which a vocational expert testified. On February 4, 1995, ALJ Stillerman again ruled that the claimant was not disabled. The Appeals Council denied Ms. Iwachniuk's request for review. On October 10, 1995, Ms. Iwachniuk brought the present action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Health and Human Services ("Commissioner"). Both parties have filed motions for summary judgment. For the reasons set forth below, Ms. Iwachniuk's motion is granted and the Commissioner's motion is denied.

### Facts

At the hearings, Ms. Iwachniuk testified to the following facts. She was born on March 22, 1957, had never married, and had no children. Tr. 185–86. She had always lived with her mother. Tr. 186. Ms. Iwachniuk attended school only through the eighth grade. Tr. 214. She did not go to high school but took some special classes for slow learners until she was 15 or 16. Tr. 188, 216. Ms. Iwachniuk has never applied for or held a job. Tr. 214–15.

Ms. Iwachniuk stated that her day is spent reading, riding a bike, and going shopping. Tr. 189. She takes the bus alone to a nearby mall when she goes shopping. Tr. 189. When making purchases, she does not know

1. Ms. Iwachniuk had previously filed a claim for SSI benefits on August 22, 1990, which was rejected. She did not seek judicial review of the prior claim.

if she receives correct change.. Tr. 190. Ms. Iwachniuk also helps out around the house, vacuuming and washing dishes. Tr. 193–94. She has no friends and has not had any since she attended school. Tr. 194–95. Ms. Iwachniuk does not claim any physical impairment. Tr. 198.

Gloria Iwachniuk, Kimberly Iwachniuk's mother, also testified at both hearings. Ms. Gloria Iwachniuk stated that the plaintiff did not pay any bills in the house. Tr. 201. She could not explain why her daughter had no friends. Tr. 200. According to Ms. Gloria Iwachniuk, the claimant sometimes forgets to clean her room when she is asked. Tr. 201. Ms. Gloria Iwachniuk has not encouraged her daughter to seek employment in the last five years. Tr. 202–03. She had contacted Public Aid regarding special training for the claimant, but has not contacted any organization that provides special vocational training. Tr. 203.

In a "Disability Report" dated February 6, 1992, Ms. Iwachniuk stated that she had no limitations as to household maintenance. Tr. 95. She also indicated that she visited friends, relatives, and neighbors weekly. Tr. 95. A Social Security employee observed Ms. Iwachniuk and her mother completing the Disability Report. She was "neatly dressed" and was able to answer all the employee's questions. Tr. 99. When the employee asked Ms. Iwachniuk why she had never tried attending school after eighth grade, she replied that "her mother didn't think she could handle it." Tr. 99. The employee also noted that Ms. Iwachniuk looked to her mother for approval while answering the questions. Tr. 99.

Ms. Iwachniuk completed an "Activities of Daily Living Questionnaire" on March 5, 1992. In the questionnaire, Ms. Iwachniuk indicated that she cleans and vacuums once a week. Tr. 139. She enjoys being with other people and "sometimes" likes to be by herself. Tr. 141. Ms. Iwachniuk states that she is not afraid of people, does not tend to get angry and fight with people, and does not get upset when people give her orders or criticize her. Tr. 141. She states that her hobby is collecting penguins. Tr. 142.

On December 20, 1991, Nestor Manjarret, a consulting psychiatrist, completed an evaluation form in which he estimated the claimant's sustained ability to carry out certain activities in an 8 hour workday, 5 days a week. Tr. 144–46. Dr. Manjarret opined that Ms. Iwachniuk would have "extreme" limitations in her ability to understand, remember, and carry out technical or complex job instructions. Tr. 144. He also wrote that she would experience "marked" difficulties in understanding, remembering, and carrying out "detailed but uncomplicated job instructions." Finally, Dr. Manjarret indicated that Ms. Iwachniuk would have "extreme" limitations in her ability to understand, remember, and carry out a "simple one or two-step job instruction." Tr. 144. Regarding interpersonal relations, Dr. Manjarret stated that Ms. Iwachniuk would have "extreme" difficulty interacting with supervisors, but only "moderate" limitations in her ability to interact with co-workers. Tr. 144. Dr. Manjarret also indicated that Ms. Iwachniuk would have "extreme" difficulties in dealing with the public and sustaining her concentration and attention. Tr. 144. Dr. Manjarret diagnosed Ms. Iwachniuk with mild mental retardation. Tr. 146. He thought that Ms. Iwachniuk would become "shaky" and "anxious," and her mental status would "possible [sic] decompensate" under the stress of a competitive full-time job. Tr. 145.

On March 21, 1992, Alan Ward performed a psychological evaluation of Ms. Iwachniuk on a referral from the Illinois Department of Rehabilitation Services. Tr. 147–48. He reported that during the examination Ms. Iwachniuk appeared "shy, dependent[,] and childlike," but was also "friendly and cooperative throughout the examination." Tr. 147–48. Dr. Ward evaluated Ms. Iwachniuk's intelligence quotient ("IQ") using the Wechsler Adult Intelligence Scale–Revised ("WAIS–R") test. Ms. Iwachniuk scored a verbal IQ of 72 and a performance IQ of 85. Tr. 148. Her full-scale IQ was 78. Tr. 148. Ms. Iwachniuk scored low in subtests requiring arithmetic concepts and short-term memory. Tr. 148. She performed best on the "subtests requiring familiarity with the ev-

eryday world and analytic and synthetic skills." Tr. 148.

Ms. Iwachniuk was evaluated by another psychologist, Nicolette Puntini, on September 23, 1992. Tr. 149–52. Dr. Puntini observed that Ms. Iwachniuk "appeared slow intellectually" and "displayed a limited range of affect." Tr. 149. According to Dr. Puntini, Ms. Iwachniuk made coherent statements, but provided only limited information. Tr. 149. Dr. Puntini also noted that Ms. Iwachniuk exhibited no psychotic symptoms. Tr. 149. Ms. Iwachniuk told Dr. Puntini that she "never thought about working" because her mother "never suggested it." Tr. 150.

On the WAIS–R test conducted by Dr. Puntini, Ms. Iwachniuk scored a verbal IQ of 71, a performance IQ of 83, and a full-scale IQ of 76. Tr. 151. Dr. Puntini concluded that "Ms. Iwachniuk would have difficulty meeting the minimum standards of a normal, competitive work setting on a sustained basis." Tr. 152. She opined that while Ms. Iwachniuk was intellectually slow, her IQ score did not signify mental retardation. Tr. 152. She further noted that Ms. Iwachniuk could understand, remember, and carry out "only very simple instructions." Tr. 152.

Dr. Puntini also stated that Ms. Iwachniuk was passive, submissive, and dependent on others for most activities of daily living. Tr. 152. She noted that Ms. Iwachniuk told her that she spent most of her time alone or with her mother and that she was very close to her mother. Tr. 150. Dr. Puntini observed that Ms. Iwachniuk "appeared to be very dependent on her [mother]." Tr. 150. According to Dr. Puntini, Ms. Iwachniuk's intellectual limitations and dependent personality "would militate against her being able to respond appropriately to the public, coworkers and supervisors in a routine work setting." Tr. 152. Dr. Puntini found it "extremely unlikely" that Ms. Iwachniuk could "sustain normal, competitive employment for any appreciable length of time." Tr. 152.

Dr. Puntini also completed a form assessing Ms. Iwachniuk's limitations in various functional categories. Tr. 153–61. On this form, Dr. Puntini indicated that Ms. Iwachniuk meets listing 12.08 (Personality Disorders) because of her dependent personality. Tr. 153. Dr. Puntini stated that Ms. Iwachniuk's restrictions on activities of daily living, difficulties in maintaining social functioning, and deficiencies in concentration, persistence, or pace were all "marked" or "frequent." Tr. 160.

Frank Mendrick, a vocational expert ("VE"), testified at the hearing on September 7, 1994. Mr. Mendrick responded to several hypothetical questions. The ALJ began by presenting a hypothetical involving a person of the same age and education as Ms. Iwachniuk. Tr. 223. According to the VE, over 25,000 jobs involving "medium work"[2] were available to a person exhibiting these characteristics. Tr. 223. An additional 25,000 jobs involving "light work"[3] were also available. Tr. 224. Mr. Mendrick stated that both the medium and light jobs available were simple jobs involving simple instructions. Tr. 224–25. The ALJ then modified the hypothetical to consider a person with a full-scale IQ of 80, a dependent personality, and a limited ability to understand instructions, but a capacity to comprehend simple instructions. Tr. 225. Mr. Mendrick opined that the number of jobs available to such a person would be reduced by 40 percent. Tr. 225–26. Finally, the ALJ modified the hypothetical so that the person's low IQ and dependent personality resulted in an inability to follow simple instructions. Tr. 227. According to the VE, the job base for such a person would be reduced to zero because that person could not understand and follow simple instructions. Tr. 227.

Ms. Iwachniuk's attorney then presented Mr. Mendrick with two hypothetical situations. These questions incorporated the reports of Dr. Manjarret and Dr. Puntini, respectively. Tr. 230–33. In both situations,

---

2. Mr. Mendrick defined "medium work" to require standing or walking for six hours in an eight hour workday, regularly lifting items weighing up to 20 pounds, and occasionally lifting items that weigh 50 pounds. Tr. 222.

3. The VE defined "light work" as work performed walking or standing for six out of eight hours, frequently carrying items weighing up to ten pounds, and occasionally lifting up to twenty pounds. Tr. 222.

the VE stated that the job base for such a person would be severely limited because that person lacked the ability to understand and carry out simple instructions, to respond to supervision and co-workers in usual job situations, and to deal with changes in a routine setting. Tr. 232–234.

After consideration of the entire record, ALJ Stillerman concluded that Ms. Iwachniuk was not "disabled" within the meaning of the Social Security Act. Tr. 17–18. He found that Ms. Iwachniuk has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for the capacity to follow complex job instructions. Tr. 17. The ALJ further concluded that since the claimant could perform unskilled work at all exertional levels, the applicable regulation mandates a finding of "not disabled." Tr. 17.

### Standard of Review

■■■ The Social Security Act ("the Act") provides for limited judicial review of final decisions of the Commissioner. The role of this court is only to determine whether the decision of the ALJ is supported by substantial evidence in the record. 42 U.S.C. §§ 405(g), 1383(c)(3); *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir.1993). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir.1993) (citation omitted). In determining whether the Secretary's findings are supported by substantial evidence, the district court may not "reevaluate the facts, reweigh the evidence, or substitute [its] own judgment for that of the [Commissioner]." *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir.1994). Rather, the court must affirm a decision supported by substantial evidence in the absence of an error of law. *Herr v. Sullivan*, 912 F.2d 178, 180 (7th Cir.1990).

### Sequential Evaluation

■■■ In order to qualify for SSI benefits, a claimant must be disabled. *Pope*, 998 F.2d at 477. The Act defines a "disabled" individual as one who is unable

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A). *See also* 20 C.F.R. § 404.1505. To satisfy this definition, an individual must have a severe impairment which makes her unable to perform her previous work or any other substantial gainful activity which exists in the national economy. 20 C.F.R. § 416.1505.

The Social Security regulations require the factfinder to follow a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The Seventh Circuit has summarized the test as follows:

> The [Commissioner] must determine in sequence: (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing any work in the national economy. Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477–78 (citing *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir.1992)).

In the present case, ALJ Stillerman applied the sequential evaluation and decided the case at step five. He found that Ms. Iwachniuk had not engaged in substantial gainful activity since her application date of February 6, 1992. Tr. 17. He also found that she suffers from borderline intelligence and a possible mild dependent personality, but does not have an impairment or combination of impairments listed in or medically equal to one listed in the applicable regulations; that Ms. Iwachniuk's allegations of severe limitations were not supported by the medical evidence or relevant credibility fac-

tors; that Ms. Iwachniuk has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for the capacity to follow complex job instructions; that Ms. Iwachniuk has no exertional impairments; that Ms. Iwachniuk has no past relevant work; and that Ms. Iwachniuk's nonexertional limitations do not significantly compromise her ability to perform work at all exertional levels. Tr. 17–18. The ALJ then concluded that, after considering the range of work at all levels which Ms. Iwachniuk is capable of performing, in combination with her age, education, and work experience, Ms. Iwachniuk is "not disabled." Tr. 18.

### Number of Jobs Available to Ms. Iwachniuk

Ms. Iwachniuk argues, *inter alia,* that her residual functional capacity limitations, resulting from her impaired intellectual capabilities and a dependent personality disorder, render her unable to work.[4] To support this position, Ms. Iwachniuk relies on the testimony of Frank Mendrick, a vocational expert.

During the hearing, Mr. Mendrick was presented with numerous hypothetical situations and asked to opine whether jobs existed for a person who exhibited the hypothetical characteristics. One hypothetical asked by ALJ Stillerman involved a 37 year old woman who had an eighth grade education, had no limitations on her physical exertion, had an IQ around 80, and suffered from a dependent personality, but was otherwise oriented and alert, and had a small limitation in her ability to understand instructions, but could understand simple instructions. Tr. 225–26. Mr. Mendrick stated that 25,000 jobs existed for such a person in the areas of general assembly, hand packing, and machine operating/tending, but that number would be reduced by 40 percent because of that person's limitation in her ability to understand instructions. Tr. 226. Despite this limitation, the hypothetical person presented by ALJ

Stillerman would have a significant number of jobs available to her.

ALJ Stillerman then asked Mr. Mendrick about the job prospects for a woman with a borderline intellect and a dependent personality, such that her emotional problems together caused "a very significant limitation in what [she] can understand and follow through on" because she could not follow simple instructions. Tr. 227. Mr. Mendrick responded that there would be few jobs available to such a person. Tr. 227.

Ms. Iwachniuk then presented two hypotheticals which incorporated the medical reports of Dr. Manjarret and Dr. Puntini. Tr. 229–33. In each case, Mr. Mendrick testified that there would be no jobs which the person with the diagnosed functional limitations could perform.

■ Despite the fact that the VE said there would be no jobs for a person with Ms. Iwachniuk's characteristics, ALJ Stillerman still found that there were jobs in the national economy which Ms. Iwachniuk could perform. In reaching this conclusion, ALJ Stillerman rejected the limitations on Ms. Iwachniuk's abilities noted by both Drs. Puntini and Manjarret. ALJ Stillerman, however, "cannot make his own independent medical determinations about the claimant." *Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir.1985).

ALJ Stillerman explained that he rejected Dr. Manjarret's report because he found it internally inconsistent. In his report, Dr. Manjarret concluded that the plaintiff would have extreme limitations in working with simple instructions, interacting with supervisors or the public, and maintaining concentration or attention. ALJ Stillerman noted that Dr. Manjarret indicated "extreme" limitations in Ms. Iwachniuk's ability to work with simple instructions, but found only "marked" limitations in working with detailed but uncomplicated instructions. Tr. 144.

---

4. Ms. Iwachniuk also maintains that her dependent personality disorder meets listing 12.08 for personality disorders. In the alternative, she argues that the combination of her personality disorder and borderline verbal IQ render her disabled under 20 C.F.R. § 404.1523. Because I decide that Ms. Iwachniuk is disabled based on her residual functional capacity limitations, I need not address these other contentions.

Although the "extreme" limitations in Ms. Iwachniuk's ability to work with simple instructions is not entirely consistent with "marked" limitations in her ability to follow "detailed but uncomplicated" instructions, I do not think this inconsistency justifies completely disregarding Dr. Manjarret's report. *See Scivally v. Sullivan,* 966 F.2d 1070, 1076–77 (7th Cir.1992) (finding evidence of a slight inconsistency in doctor's responses to be inadequate support for the ALJ's decision to reject the doctor's report). The difference between a "marked" limitation and an "extreme" limitation in Ms. Iwachniuk's ability to understand instructions is small—especially when considered in light of the other limitations noted by Dr. Manjarret. Consequently, the alleged inconsistency in Dr. Manjarret's report does not justify the ALJ's rejection of it.

With respect to his rejection of Dr. Puntini's report, ALJ Stillerman stated that "her diagnosis was based on a disabling personality disorder, which the undersigned has concluded the claimant does not have." Tr. 16. He went on to note that he believed Ms. Iwachniuk's "most significant problem[ ] may not be her inability to work, but the overprotectiveness of her parents." Tr. 16–17. Essentially, ALJ Stillerman rejected all of Dr. Puntini's conclusions because he disagreed with her assessment that Ms. Iwachniuk's dependency disorder was disabling. Dr. Puntini's complete evaluation, however, diagnosed both a dependent personality and an impaired intellectual capacity. Consequently, the fact that the ALJ disagreed with Dr. Puntini's assessment as to whether Ms. Iwachniuk met the listing for a personality disorder does not justify disregarding her entire report. I find the ALJ's rejection of Dr. Puntini's report especially troubling because Dr. Puntini's assessment was matched by Dr. Manjarret's conclusions.

■ Despite contrary findings of Drs. Puntini and Manjarret, ALJ Stillerman simply did "not believe that [Ms. Iwachniuk] would have significant difficulties interacting with others in a competitive work situation." Tr. 17. ALJ Stillerman's decision to reject all of Dr. Puntini's findings and Dr. Manjarret's conclusion is not supported by substantial evidence. The little justification provided by him is inadequate, and there is no medical evidence or opinion in the record upon which he relied to contradict these conclusions. "In the absence of contradictory medical evidence, the ALJ impermissibly substituted his own medical judgment for that of the [psychologists]." *Scivally,* 966 F.2d at 1077. Because the VE testified that a person with Ms. Iwachniuk's characteristics, as assessed by either Dr. Puntini or Dr. Manjarret, would be unable to perform work in the national economy, I find the ALJ's decision that she is not disabled within the meaning of the Social Security Act to be unsupported by the evidence.

### Conclusion

For the foregoing reasons, Ms. Iwachniuk's motion for summary judgment is granted and the Commissioner's motion is denied.